Filed 3/15/16  Badiei v. J.P. Morgan Chase Bank CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KEVIN BADIEI, | D068518 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00040779-CU-OR-CTL) |
| J.P. MORGAN CHASE BANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.

Kevin Badiei, in propria persona, for Plaintiff and Appellant.

Keesal, Young & Logan, David D. Piper and Kendra S. Canape for Defendant and Respondent.

Kevin Badiei appeals a judgment entered after the trial court sustained J.P. Morgan Chase's (Chase) demurrer without leave to amend.  Badiei's complaint asked the court to "render a recordable judgment against JP Morgan Chase about the accounting

and loan balances and monthly payments" of two properties subject to Chase mortgages. Chase demurred, asserting the complaint's request failed because Badiei had not alleged any actionable controversy or that he was owed a balance. Badiei, appearing in propria persona, contends he should have been permitted to amend his complaint. We affirm the judgment.

BACKGROUND

The two properties at issue are located in San Diego County at 5957 Avenida Chamnez (Avenida Property) and 7235 Calabria Court (Calabria Property).

A. *Avenida Property*

Badiei obtained title to the Avenida Property in 2000. Several years later he obtained a loan of $1,000,000 from Washington Mutual Bank, FA (Washington Mutual) secured by a deed of trust on the property. On December 31, 2014, a Corporate Assignment of Deed of Trust was recorded against the property indicating that all beneficial interest in the loan was transferred by the Federal Deposit Insurance Corporation as receiver for Washington Mutual to JP Morgan Chase Bank, National Association.

On July 24, 2013, Badiei signed a Loan Modification Agreement providing Chase would suspend any foreclosure activity and that the new principal balance of the loan was $1,239,470.95. The agreement also provided that $214,600 of the balance would be deferred and would not bear interest. The agreement required Badiei to make monthly payments beginning on August 1, 2013, and set the payment amount and interest rate

2

(increasing from 2% to 5.5% over time).  The agreement also required the payment of the deferred balance on the loan's maturity date.

Badiei's complaint attached three mortgage statements for the Avenida Property.  The statement dated December 23, 2013, includes a "Deferred Interest Balance" of $170,432.57 that is not reflected on the November 22, 2013, statement.  The statement dated July 1, 2014, shows a "Deferred Interest Balance" of $160,529.61.  Badiei asserts the "Deferred Interest Balance" is a "phantom loan" and that the mortgage statements show approximately $1,500 per month was applied to this "phantom loan."

*B. Calabria Property*

In 2007 Badiei obtained title to the Calabria Property and a loan of $389,600 from Washington Mutual secured by a deed of trust on the property.  On July 18, 2013, Chase sent a letter to Badiei stating that under the terms of his adjustable rate mortgage, an adjustment was made to the payment due on September 1, 2013.  The letter also stated the new payment "is based on a rate of 4.45100%," a remaining term of 408 months and a "projected unpaid principal balance" of $412,710.99.

Thereafter, Badiei signed a Loan Modification Agreement for the property, effective September 1, 2013, which provided Chase would suspend foreclosure proceedings and the new principal balance of the loan was $502,941.84.  The agreement also stated $180,000 of the balance would be deferred.  The agreement set the rate of interest on the nondeferred portion of the balance at 4.625% and monthly payments at $1,570.28.    A letter dated August 4, 2014, from Chase to Badiei provided Chase was reducing the principal balance on the mortgage for the Calabria Property by $45,491.71

3

"because of a recent mortgage settlement between [Chase] and federal and state agencies." The letter stated the loan's current principal balance of $498,691.71 was adjusted to $453,200.

*C. Procedural History*

On December 2, 2014, Badiei filed a complaint against Chase requesting that the court "render a recordable judgment against [Chase] about the accounting and loan balances and monthly payments of the" two properties. The complaint contained no factual allegations of wrongdoing by Chase or of any specific dispute between Badiei and Chase. Badiei attached to the complaint both loan modification agreements; the August 4, 2014 letter from Chase indicating the reduction of the Calabria Property loan balance; the July 18, 2013 letter from Chase notifying Badiei of an adjustment to the interest rate and payment amount; a statement for the Calabria Property dated September 4, 2013; and statements for the Avenida Property dated November 22, 2013, December 23, 2013, and July 1, 2014. On February 5, 2015, Badiei filed an amended complaint changing "the classification from 'limited' to 'Unlimited.' "

Chase demurred and also sought judicial notice of documents recorded with the San Diego County Recorder's Office related to both properties. In its demurrer, Chase contended the complaint was devoid of any factual detail and that Badiei had failed to assert any ascertainable legal claim to support either an accounting or declaratory relief. Chase asserted Badiei was seeking, "in essence, either an accounting or a declaration of his rights and duties with respect to the two Loans at issue." Chase argued that the relief

4

Badiei sought was derivative only and not available absent an independently viable legal claim.

In response to the demurrer, Badiei argued he could amend the complaint to allege breach of contract claims with respect to both mortgages. With respect to the Avenida Property, Badiei asserted that instead of applying his monthly mortgage payments to reduce the principal and interest of the loan, Chase "created a Phantom loan of $169,025.92 . . . , to which Chase applies Plaintiff's monthly principal and interest payments." Badiei also stated that Chase "created a false loan balance of $1,239,470 that is based on the fraudulent indices of Washington Mutual . . . , which has been declared illegal." Likewise, with respect to the Calabria Property, Badiei asserted that the principal balance of the mortgage set forth in the Loan Modification Agreement of $502,941 is "based on the fraudulent indices of Washington Mutual . . . , which has been declared illegal." He also claimed the balance was incorrect because Chase's July 18, 2013 letter indicated the balance of the loan was only $412,710.99. Badiei further asserted Chase breached its contract with Badiei because "Chase's monthly mortgage payment demand of $1,924.65 is excessive . . . ."

Without any supporting factual allegations, Badiei also argued he would amend the complaint to include claims for intentional misrepresentation, negligent misrepresentation, fraudulent concealment, and violations of Civil Code sections 1572, 1709 and 1710. He repeated his request for an accounting and asserted that prior to filing the complaint he asked Chase for an accounting but that his request was ignored. In support of this assertion, Badiei submitted an e-mail chain between himself and Chase's

5

attorney. The e-mails show Badiei provided the complaint to Chase before September and that Chase's attorney indicated on December 10, 2014, that she believed she had resolved Badiei's concerns and would call him in the next few days to discuss the resolution.

The trial court granted Chase's request for judicial notice and sustained the demurrer without leave to amend. The court concluded the complaint failed to plead any facts to support a claim for relief, and specifically did not allege any actual controversy between the parties regarding the balances on the two loans or allege Chase owed money to Badiei. "Rather, [the complaint] evidently seeks a declaration as to the amount of money that plaintiff owes [Chase]." Recognizing it is "ordinarily an abuse of discretion to deny" a request for leave "unless the inability to state a valid cause of action is clear," the trial court concluded leave to amend was properly denied because Badiei failed to meet his "burden to show in what manner he [could] amend the [complaint] and how the amendment [would] change the legal effect of the pleading."

DISCUSSION

Badiei's briefing in this court is difficult to understand and includes long passages of irrelevant commentary on corporate and government wrongdoing in the recent financial crisis. Badiei appears to contend that the trial court erred by denying him leave to amend his complaint because he provided "evidence that the loan balances . . . are false and in breach of the loan agreement . . . ." He asserts "using crooked account practices and illegal loan indices, in breach of its loan agreement and deed of trust, Chase falsely created a loan balance of $502,941" on the Calabria Property. He contends "[b]y

6

Chase[']s own admission the loan balance should have been $412,701 and in breach of the mortgage agreement Chase is collecting monthly mortgage payments that are based on a $502,941 loan."  Similarly, Badiei asserts Chase used "crooked accounting practices" and "crooked indices" to increase the Avenida Property loan balance from $1,000,000 to $1,402,594.66.

I

We note at the outset that we address only those arguments that we can reasonably discern from Badiei's briefing and that are supported by identifiable argument. " 'Appellate briefs must provide argument and legal authority for the positions taken. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." '  [Citation.]  'We are not bound to develop appellants' arguments for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) These standards are unchanged where an appellant appears in propria persona.  "[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys."  (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210; see also *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

This court applies the following well-established law in reviewing a trial court's order sustaining a demurrer without leave to amend:  " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or

7

conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) A plaintiff must show "in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)

II

Badiei contends the court erred by denying his request to amend the complaint to add claims for breach of contract, intentional and negligent misrepresentation, fraudulent concealment and violations of Civil Code sections 1572, 1709 and 1710.[1] To state a claim for breach of contract, a plaintiff must allege "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty*, *LLC v. Goldman* (2011) 51

---

[1]     Badiei's briefing does not assert the court erred by sustaining Chase's demurrer to his request that the court "render a recordable judgment against JP Morgan Chase about the accounting and loan balances and monthly payments of" each loan.

8

Cal.4th 811, 821.) Badiei's has not provided any factual allegations as to how Chase breached the loan modification agreement for either property.

With respect to the Calabria Property loan, Badiei states only that the loan balance is too high. He does not provide any factual allegations as to what agreement Chase breached or why the higher amount constitutes a breach. (See *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636-637 [Affirming denial of leave to amend where plaintiff "insinuates multiple wrongs by respondents, [but] he never points out in what manner those insinuations could be combined to state a cause of action"].) Likewise, with respect to the Avenida Property, Badiei asserts that Chase increased the loan balance and that the line item labeled "deferred interest balance" on his monthly statements is a "phantom loan," but he does not assert any factual allegation as to how this constituted a breach of the loan modification agreement by Chase.

Badiei's claims for intentional and negligent misrepresentation, fraudulent concealment and violations of Civil Code sections 1572, 1709 and 1710[2] fair no better. " ' "The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." ' " (*Small v. Fritz Companies*, *Inc.* (2003) 30 Cal.4th 167,

_____

[2] Civil Code section 1572 defines what constitutes "actual fraud" in the making of a contract. Section 1709 states: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." (Civ. Code, § 1709.) Section 1710 defines what constitutes deceit within the meaning of section 1709.

9

173.)  "These elements may not be pleaded in a general or conclusory fashion.  [Citation.] Fraud must be pled specifically—that is, a plaintiff must plead *facts* that show with particularity the elements of the cause of action."  (*Glaski v. Bank of America, National Association* (2013) 218 Cal.App.4th 1079, 1090.)

"The tort of negligent misrepresentation does not require scienter or intent to defraud.  [Citation.]  It encompasses '[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true' [citation], and '[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true' . . . ."  (*Small v. Fritz Companies, Inc*, *supra*, 30 Cal.4th at pp. 173-174.)  In both causes of action, the plaintiff must plead actual reliance on the misrepresentation.  (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.)

Badiei has not asserted *any* factual allegations of a fraud by Chase or that support the Civil Code violations he contends he should have been permitted to add.  Badiei states only that there are inconsistencies in the various documents he attached to the complaint and that these inconsistencies are "prima facie evidence . . . of . . . crooked accounting practices" that should be considered fraudulent.  These vague assertions are not sufficient to show how Badiei would amend his complaint to assert an actionable claim.  (See *Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031 ["plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action"].)

10

Because Badiei has not shown a reasonable possibility that he can allege facts sufficient to state a claim for breach of contract or fraud, he has not established that it was an abuse of discretion to deny leave to amend.

DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

11